Galen T. Shimoda (Cal. State Bar No. 226752)
Justin P. Rodriguez (Cal. State Bar No. 278275)
**Shimoda Law Corp.**
9401 East Stockton Blvd., Suite 200
Elk Grove, CA 95624
Telephone: (916) 525-0716
Facsimile: (916) 760-3733
Email: attorney@shimodalaw.com
        jrodriguez@shimodalaw.com

Attorneys for Plaintiff KELLY HOOVER

## UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY HOOVER,<br><br>    Plaintiff,<br><br>  vs.<br><br>MOM365, INC., a Missouri Corporation;<br>and DOES 1 to 100, inclusive,<br><br>    Defendants. | **Case No. 2:17-cv-01328-TLN-CKD**<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       August 9, 2018<br>Time:      2:00 p.m.<br>Crtm:     2, 15th Floor<br>Judge:    Hon. Troy L. Nunley<br><br>Filed:        May 19, 2017<br>FAC Filed:  September 1, 2017<br>Trial Date:  None Set |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 2:00 p.m., on August 9, 2018, or as soon after as the matter can be heard, on the 15th Floor in Courtroom 2 of the United States Eastern District Court of California, 501 I Street Sacramento, California 95814, Plaintiff Kelly Hoover, individually and on behalf of all other similarly situated employees, will, and hereby does, move for entry of an Order for the following:

1.  Preliminarily and conditionally certifying the proposed class herein (proposed as "All of Defendant's California employees who were paid under Defendant's commission, piece rate, and/or incentive based compensation system, including but not limited to, employees working under the photographer job title, from May 17, 2013 to the Preliminary Approval Date") for purposes of settlement subject to a final fairness hearing and certification of the settlement class;

2.  Preliminarily and conditionally approving and appointing Plaintiff Kelly Hoover as class representative for purposes of settlement subject to a final fairness hearing and certification of the settlement class;

3.  Preliminarily and conditionally approving and appointing the Shimoda Law Corp. as class counsel for purposes of settlement subject to a final fairness hearing and certification of the settlement class;

4.  Preliminarily and conditionally approving the proposed class action and Private Attorneys General Act settlement, which is filed as Exhibit A to this Motion and incorporated herein by reference subject to a final fairness hearing and certification of the settlement class;

5.  Preliminarily and conditionally approving the appointment of Simpluris, Inc. as the class action settlement administrator subject to a final fairness hearing and certification of the settlement class;

6.  Preliminarily and conditionally approving as to form and content the proposed Notice of Proposed Class Action Settlement, and Hearing Date for Final Court Approval of Settlement ("Class Notice") and Disbursement Form, which provide class members with information regarding the settlement, including how to participate in the settlement, how to opt out of the settlement, and how to object to the settlement and/or dispute the calculation of their individual shares of the settlement;

7.  Preliminarily and conditionally approving the proposed procedures to notify the class and determining that the proposed notification procedures and Class Notice satisfy class members' due process rights subject to a final fairness hearing and certification of the settlement class;

8. Directing the Defendant to report employment information, including social security numbers, to the claims administrator to administer the settlement;

9. Scheduling a fairness hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable, and adequate as to the members of the settlement class and on certification of the settlement class;

10. Setting a hearing and briefing schedule to consider Plaintiff's Motion for Attorneys' Fees, Costs that will be heard on the same day as the final approval hearing;

11. Preliminarily and conditionally approving, subject to a final fairness hearing and certification of the settlement class, that for any portion of the Net Settlement Amount allocated to class members that was not claimed by class members by cashing their respective settlement checks before the deadline to do so, that residue will be paid out pursuant to Code of Civil Procedure section 384(b), in the following manner: (a) 25% to the State Treasury for deposit in the Trial Court Improvement and Modernization Fund; (b) 25% to the State Treasury for deposit into the Equal Access Fund of the Judicial Branch; and (c) 50% to the Sacramento Voluntary Legal Services Program Employment Law Clinic as the cy pres beneficiary; and

12. Preliminarily and conditionally approving and adopting the Proposed Order and its implementation schedule, which is filed herewith and incorporated by reference.

This motion is being made pursuant to Federal Rule of Civil Procedure 23 and California Labor Code section 2699(l) on the grounds that the proposed class action and Private Attorneys General Act settlement is fair, reasonable, and adequate as to all class members and should be approved by the Court. This motion will be based on the notice of motion, memorandum of points and authorities, the Declaration of Justin P. Rodriguez, the Declaration of Kelly Hoover, exhibits, the record and files of this case, and any further oral or documentary evidence introduced at the hearing of this motion.

Dated: July 3, 2018                    **Shimoda Law Corp.**

                              By:    /s/ Justin P. Rodriguez
                                     Galen T. Shimoda
                                     Justin P. Rodriguez
                                     Attorneys for Plaintiff

# TABLE OF CONTENTS

I. Introduction and Opening Summary of Argument ........................................................ 1

II. Procedural and Litigation History ............................................................................... 3

III. Investigation and Discovery Conducted ..................................................................... 4

IV. Negotiation and Proposed Settlement ......................................................................... 4

     a. Plaintiff and Defendant Engaged in Extensive Arm's Length Negotiations ................... 4

     b. The Terms of Settlement ................................................................................................ 4

     c. Allocation of Settlement Funds .................................................................................... 6

V. Argument ..................................................................................................................... 6

     a. Class Action Settlements and PAGA Settlements are Subject to Court Review and Approval ............................................................................................... 6

     b. Preliminary and Conditional Approval of the Settlement Class is Appropriate ............... 7

         i. Numerosity ........................................................................................................ 8

         ii. Commonality, Typicality, and Predominance ....................................................... 8

         iii. The Adequacy Requirement is Met ................................................................. 10

         iv. Superiority ...................................................................................................... 11

     c. The Agreement Should Be Preliminarily Approved Because The Terms of The Agreement Are Fair and Within the Range of Reasonableness .............................................................................................. 12

         i. The Settlement is a Result of Serious, Informed, Non-Collusive Arm's Length Negotiations Between the Parties ................................................. 12

         ii. The Settlement Has No Obvious Deficiencies ..................................................... 13

         iii. The Settlement Does Not Improperly Grant Preferential Treatment to The Class Representative of Segments of the Class ......................................... 14

         iv. The Settlement Falls Within The Range of Possible Approval .......................... 14

            A. The Settlement is Fair and Reasonable Based on the Strength of Plaintiffs' Case and the Risks, Costs, Complexity and Likely Duration of Further Litigation ................................................. 15

            B. Risk of Maintaining Class Action Status Through Trial ....................... 16

            C. The Amount Offered In Settlement ...................................................... 17

D.  The Extent of Investigation and Discovery Completed Provided Ample Information to Enter Into an Informed and Reasonable Settlement..................................................................... 17

E.  The Views and Experience of Plaintiffs' Counsel ................................ 17

F.  The Presence of A Governmental Participant and the Reaction of Class Members ................................................................. 18

G.  Class Counsels' Attorneys' Fees and Costs Request ............................ 18

d.  The Notice Packet and Notice Procedures Comply With Class Members' Due Process Rights................................................................................................. 18

VI.  Conclusion ...................................................................................................... 19

**MPA ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF AUTHORITIES

**CALIFORNIA CASES**

*Bluford v. Safeway Inc.,* 216 Cal.App.4th 864 (2013) ........................................................ 9

*Brinker Restaurant Corp. v. Sup. Ct.,* 53 Cal.4th 1004 (2012) ........................................ 10

*Lubin v. Wackenhut Corp.,* 5 Cal.App.5th 926 (2016) ...................................................... 10

*Vaquero v. Stoneledge Furniture, LLC,* 9 Cal.App.5th 98 (2017) ...................................... 9

**FEDERAL CASES**

*Alba v. Papa John's USA,* 2007 U.S. Dist. LEXIS 28079 (C.D. Cal. 2007) ...................... 8

*Alberto v. GMRI, Inc.,* 252 F.R.D. 652 (E.D. Cal. 2008) ................................................ 14

*Allen v. Bedolla,* 787 F.3d 1218 (9th Cir. 2015) ........................................................... 7, 8

*Amchem Prods. v. Windsor,* 521 U.S. 591 (1997) .......................................................... 11

*Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds,* 133 S. Ct. 1184 (2013) ................. 8

*Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245 (N.D. Cal. 2015) ............................ 7

*Boyd v. Bechtel Corp.,* 485 F.Supp. 610 (N.D. Cal. 1979)…………....................... 7, 12, 13, 17

*Churchill Vill., L.L.C. v. GE,* 361 F.3d 566 (9th Cir. 2004) ...................................... 15, 18

*Dirks v. Layton Brokerage Co. of St. Louis, Inc.,* 105 F.R.D. 125 (D. Minn. 1985) .......... 11

*Dudum v. Carter's Retail, Inc.,* 2015 U.S. Dist. LEXIS 118583 (N.D. Cal. 2015)) ............ 12

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),* 213 F.3d 454 (9th Cir. 2000) ........ 15

*Ellis v. Costco Wholesale Corp.,* 657 F.3d 970 (9th Cir. 2011) ........................................ 8

*Gallardo v. AT&T Mobility, LLC,* 937 F. Supp. 2d 1128 (N.D. Cal. 2013) ........................ 9

*Gomez v. Rossi Concrete, Inc.,* 270 F.R.D. 579 (S.D. Cal. 2010) ..................................... 9

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ............................................. 7, 8

*Harris v. Vector Mktng. Corp.,* 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. 2011) .......... 12, 13, 14

*In re Conagra Foods, Inc.,* 90 F.Supp.3d 919 (C.D. Cal. 2015) ........................................ 8

*In re Omnivision Technologies, Inc.,* 559 F.Supp.2d 1036 (2007) ................................... 15

*In re Scorpion Techs., Inc. Sec. Litig.,* 1994 U.S. Dist. LEXIS 21413 (N.D. Cal. 1994) ......... 8

*Jimenez v. Allstate Ins. Co., 2012 U.S. Dist.* LEXIS 65328 (C.D. Cal. 2012) .............. 8, 10

**MPA ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.),*
 654 F.3d 935 (9th Cir. 2011) ........................................................................... 13

*Lane v. Facebook, Inc.,* 696 F.3d 811 (9th Cir. 2012)....................................... 7, 13, 14, 17

*Leyva v. Medline Industries, Inc.,* 716 F.3d 510 (9th Cir. 2013)................................... 9, 11

*Lilly v. Jamba Juice Co.,* 308 F.R.D. 231 (N.D. Cal. 2014) ............................................ 8

*Linney v. Cellular Alaska P'ship,* 151 F.3d 1234 (9th Cir. 1998).................................... 17

*Mendoza v. United States,* 623 F.2d 1338 (9th Cir. 1980)............................................. 18

*Pena v. Taylor Farms Pac., Inc.,* 305 F.R.D. 197 (E.D. Cal. 2015)................................ 10

*Reed v. 1-800 Contacts, Inc.,* 2014 U.S. Dist. LEXIS 255 (S.D. Cal. 2014).................... 15

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.),* 779 F.3d 934 (9th Cir. 2015)........... 10

*Rica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804 (2011) ..................................... 8

*Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474 (E.D. Cal. 2006)....................... 8

*Ruch v. Am Retail Grp., Inc.,* 2016 U.S. Dist. LEXIS 39629 (N.D. Cal. 2016) ................ 13

*Sakkab v. Luxottica Retail N. Am., Inc.,* 803 F.3d 425 (9th Cir. 2015) ............................ 9

*Sciortino v. PepsiCo, Inc.,* 2016 U.S. Dist. LEXIS 83937 (N.D. Cal. 2016) ................. 7, 12

*Stevenson v. Dollar Tree Stores, Inc.,* 2011 U.S. Dist. LEXIS 119801 (E.D. Cal. 2011) ......... 13

*Tierno v. Rite Aid Corp.,* 2006 U.S. Dist. LEXIS 66436 (N.D. Cal. 2006).......................... 8

*United Steel, Paper & Forestry, Rubber, Mfg. v. ConocoPhillips Co.,*
 593 F.3d 802 (9th Cir. 2010) ........................................................................... 9

*Villegas v. J.P. Morgan Chase & Co.,* 2012 U.S. Dist. LEXIS 114597 (N.D. Cal. 2012)......... 7

*Wixon v. Wyndham Resort Dev. Corp.,* 2009 U.S. Dist. LEXIS 100451 (N.D. Cal. 2009) ....... 7, 8

**CALIFORNIA STATUTES**

Cal. Lab. Code § 2699 ..................................................................... 6, 7, 16, 18

Cal. Lab. Code §§ 245, et seq. ........................................................................ 9

Cal. Lab. Code § 226 .................................................................................. 9

Cal. Lab. Code § 227.3 ................................................................................ 9

**FEDERAL STATUTES AND OTHER AUTHORITIES**

Fed. R. Civ. Proc. 23.......................................................................... 7, 11, 17

**MPA ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION AND OPENING SUMMARY OF ARGUMENT

This Motion is brought seeking preliminary approval of a wage and hour class action and Private Attorneys General Act ("PAGA") settlement in the total gross amount of $400,000.00, which is exclusive of Defendant Mom365, Inc.'s ("Defendant"), tax obligations on any monies allocated as wages under the settlement.  *See generally* Exhibit A (Joint Stipulation Regarding Class Action Settlement and Release).  Plaintiff Kelly Hoover ("Plaintiff") brought this class action and PAGA action on behalf of herself and other similarly situated employees employed by Defendant seeking unpaid wages, penalties, and interest.  *See generally* Exhibit B (Plaintiff's First Amended Complaint).

This lawsuit is based on Plaintiff's contention that Defendant's policies and practices violated California law, including the following alleged policies and practices: 1) Defendant's commission, piece rate and/or incentive based compensation system did not directly compensate class members for rest periods and, therefore, Defendant failed to provide legally compliant paid rest periods to class members; 2) Defendant's incentive based compensation system did not compensate class members for non-productive time during pay periods where they only earned incentive based compensation such as commissions and/or piece rate; 3) Defendant's failure to pay all wages owed through the time of class members' termination triggered waiting time penalties; 4) Defendant failed to provide accurate wage statements as they did not itemize rest period premiums and account for all wages owed; and 5) Defendant failed to provide Paid Time Off benefits in violation of California Labor Code section 227.3 and failed to provide Paid Time Off benefits that complied with the California Healthy Workplace Healthy Families Act of 2014 (Cal. Lab. Code sections 245, *et seq.*).  *See generally* Exhibit B; Exhibit C (Plaintiff's October 31, 2017 Ltr. to the Labor and Workforce Development Agency).  Plaintiff contends that she has filed a meritorious class action lawsuit and that this case is appropriate for class certification for settlement purposes as the requisites for class certification in this case can be satisfied and the terms of the settlement are fair, reasonable, and adequate as to all class members.  *See* Exhibit A; Exhibit B.

Defendant, however, has denied all of Plaintiff's allegations in their entirety and any liability or wrongdoing of any kind.  *See* Declaration of Justin P. Rodriguez ("Decl. Rodriguez"), ¶ 6.  Defendant has contended, among other things, that its commissioned employee photographers were properly

classified as exempt from minimum wages and overtime under the outside salesperson exemption; that its compensation system nevertheless paid employees for all hours worked, including time spent during rest periods; and that no violation of California Labor Code § 227.3 occurs by virtue of its paid time off policy not meeting the separate requirements for paid sick leave pursuant to the California Healthy Workplace Healthy Families Act of 2014. *See id.* Defendant further takes the position that Plaintiff would be unsuccessful in asserting PAGA claims against Defendant for numerous reasons, including, but not limited to, the fact that it cured the alleged violation (for violations that permitted the right to cure).

Both sides obviously disagree with the other party's respective positions. However, subject to final approval by the Court, Plaintiff and Defendant have been able to reach a class and PAGA settlement as a result of discovery, litigation, negotiations, consideration of the mutual risks held by both parties, and a mediation conducted by Jeffrey A. Ross, Esq. *See* Exhibit A. Based on their knowledge of the issues in this case, Plaintiff and Plaintiff's counsel are convinced that the proposed settlement is in the best interest of the class considering the discovery, mutual risks held by both parties, litigation, and negotiations that have occurred. *See* Decl. Rodriguez ¶¶ 7-12; Declaration of Kelly Hoover ¶ 8. The uncertainty of obtaining and maintaining class certification, difficulties of complex litigation, risks and uncertainty in proving the alleged claims on the merits, risks and uncertainty in proving damages, Defendant's claim of financial hardship and the risk of bankruptcy, and the potential for protracted litigation and various possible delays and appeals were carefully considered by Plaintiff and Plaintiff's counsel in agreeing to the proposed settlement. *See id.*

It is well within the discretion of this Court to grant preliminary and conditional approval of the proposed settlement, which satisfies all of the criteria for preliminary settlement approval under federal law, and preliminarily and conditionally approve the settlement class. Accordingly, Plaintiff requests that the Court: (1) preliminarily approve the proposed settlement class; (2) grant preliminary approval of the proposed Joint Stipulation Regarding Class Action Settlement and Release ("Agreement"); (3) set dates for distribution of the Notice of Proposed Class Action Settlement, and Hearing Date for Final Court Approval of Settlement and Disbursement Form ("Class Notice") to the class; (4) set a final fairness and settlement class certification hearing and briefing schedule therefore; (5) set a hearing for

Plaintiff's Motion for Attorneys' Fees and costs and briefing schedule therefore that will be heard at the same time as the final fairness hearing; and (6) adopt the implementation schedule contained in the proposed order.

## II.    PROCEDURAL AND LITIGATION HISTORY

Defendant employed Plaintiff as a commissioned sales photographer until August 22, 2016, during which, it compensated Plaintiff in accordance with its commission-based compensation system. On May 17, 2017, Plaintiff sent notice pursuant to California Labor Code sections 2699 *et seq.* to the California Labor and Workforce Development Agency ("LWDA") to exhaust administrative remedies under the PAGA.  The notice alleged facts and theories to support PAGA claims for failure to provide itemized statements, failure to provide paid sick leave, failure to pay vacation wages, and waiting time penalties.  An amended notice was sent to the LWDA on October 31, 2017, adding claims for failure to provide rest periods and failure to pay minimum wages.  The LWDA did not respond within the statutory period to any of the provided notices, authorizing Plaintiff to act as Private Attorney General under the PAGA statute.  *See* Decl. Rodriguez ¶ 4; Exhibit C.

Plaintiff filed a Complaint on May 19, 2017 in the California Superior Court for the County of Sacramento.  Defendant removed the case to the United States District Court for the Eastern District of California on approximately June 29, 2017.  Plaintiff filed a First Amended Complaint on approximately September 1, 2017 alleging class action claims and adding additional claims for failure to provide rest periods and failure to pay minimum and overtime wages.  *See* Decl. Rodriguez ¶ 5; Exhibit B.  The parties engaged in extensive written and informal discovery that included the number of class members, the dates of employment for class members, average rates of pay for class members, documents showing hours worked, PTO use and accrual logs, relevant handbook excerpts, documents evidencing Defendant's financial viability, and other documents relating to the alleged claims.  *See* Decl. Rodriguez ¶ 8.  After an analysis of this information, its impact on certification, the asserted claims and damages, and a full day of mediation, the parties were able to reach a mutually agreeable settlement.  *See* Decl. Rodriguez ¶¶ 7-11.

//

//

### III.   INVESTIGATION AND DISCOVERY CONDUCTED

Plaintiff and Plaintiff's counsel thoroughly investigated the potential for obtaining and maintaining certification, the merits of the claims, and the potential damages for such claims. *See* Decl. Rodriguez ¶¶ 7-11. Plaintiff experienced all policies and practices that gave rise to the asserted claims. *See* Declaration of Kelly Hoover ¶ 3.

The parties engaged in substantial investigations concerning the scope of the class, their workweeks, their pay periods, their hours worked, their rates of pay, wage and hour policies, and also performed other document review and factual and legal analysis regarding each aspect of the underlying claims. *See* Decl. Rodriguez ¶ 8-11. The discovery covered the number of class members, their workweeks, all relevant wage and hour policies and practices at issue, and average rates of pay for class members. *See id.* The information Plaintiff produced and obtained from Defendant enabled Plaintiff to create an accurate damages model and perform reliable calculations to determine Defendant's potential exposure if Plaintiff were successful on certification and at trial. *See id.* at ¶¶ 9-11.

### IV.   NEGOTIATION AND PROPOSED SETTLEMENT

#### a.   <u>Plaintiff and Defendant Engaged in Extensive Arm's Length Negotiations</u>

The final settlement occurred only after extended, contentious arm's length negotiations. For over one year, Plaintiff has been investigating the claims and discussing with Defendant's counsel the merits of the claims and certification issues present in this case. *See id.* at ¶¶ 6-7. The parties attended mediation utilizing the services of mediator Jeffrey A. Ross, Esq. on January 16, 2018 to attempt to resolve the claims. *See id.* ¶ 7. The parties ultimately did not resolve the matter on that day. *See id.* Further discussions facilitated by Mr. Ross occurred after the mediation that resulted in the parties reaching an agreement in principle to resolve the claims for the amount of $400,000.00 and later enter into the Agreement. *See id.*

#### b.   <u>The Terms of the Settlement</u>

Under the Agreement, Defendant has agreed to the following:

1.     The scope of the settlement class will include all of Defendant's California employees who were paid under Defendant's commission, piece rate, and/or incentive based compensation system, including but not limited to, employees working under the photographer job title, from May 17, 2013 to

the Preliminary Approval Date. *See* Exhibit A, § 1.5. The settlement class shall not include any person who submits a timely and valid request to opt-out as provided in the Agreement. *See id.* at § 4.1. The estimated class size is approximately 1,061 individuals. *See id.* at § 1.5.

2.      Pay $400,000.00 in addition to any monies necessary to satisfy Defendant's tax obligations (*e.g.* employer FICA, FUTA and SDI contributions on wage payments) on any monies distributed to class members that are allocated as wages under the Agreement. *See id.* at § 5.1. No portion of this amount will revert to Defendant for any reason. *See id.* at § 5.5.

3.      The parties agree that the cost of administering this class action settlement shall be paid from the settlement proceeds. Subject to Court approval, the parties have selected Simpluris, Inc., to act as the class action administrator, who has provided a cost estimate of approximately $14,499.00 to administer the class settlement. *See* Exhibit D (Simpluris, Inc., Class Administration Quote). The proposed notices sent to class members will state that the costs will not exceed $30,000.00 to account for any future, unforeseen administration costs that may arise between now and final approval. The difference between actual administration costs awarded and the $30,000.00 will be redistributed to the class pro rata. *See* Exhibit A, § 5.4.

4.      The parties agree that $10,000.00 of the settlement proceeds will be allocated to PAGA claims. *See* Exhibit A, § 5.3. The settlement class will receive 25% of this amount (*i.e.*, $2,500), which will be included in the class payout, and the LWDA will receive 75% of this PAGA penalty (*i.e.*, $7,500). *See id.*

5.      The parties agree that up to twenty-five percent (25%) of the Gross Settlement Payment, *i.e.* $100,000.00, will be paid for Plaintiff's attorneys' fees and Defendant will not oppose any application for attorneys' fees so long as it is within this threshold. *See id.* at § 5.2. Additionally, the parties agree that Plaintiff will also be entitled to litigation costs not to exceed $12,000.00. *See id.* The proposed notices sent to class members will state amount of attorneys' fees and costs requested. *See* Exhibit 1 to Exhibit A. The difference between the amount of attorneys' fees and costs awarded and the maximum amounts allocated therefor under the Agreement will be redistributed to class members pro rata. *See* Exhibit A, § 5.2

//

6.      Any class action administrator fees, any amounts paid for attorneys' fees and costs, and payment to the LWDA will be paid out from the Gross Settlement Amount ($400,000.00), not in addition to the Gross Settlement Amount. *See id.* at § 5.1.

7.      Class members who fail to timely opt out of this settlement will waive any and all claims that were pled in the Action or could have been pled in the Action. *See id.* at § 1.25.

8.      For any residue from settlement checks that were not cashed within one hundred and eighty (180) days of issuance, this amount will be paid out pursuant to Code of Civil Procedure section 384(b), in the following manner: (a) 25% to the State Treasury for deposit in the Trial Court Improvement and Modernization Fund; (b) 25% to the State Treasury for deposit into the Equal Access Fund of the Judicial Branch; and (c) 50% to the Sacramento Voluntary Legal Services Program Employment Law Clinic as the *cy pres* beneficiary. *See* Exhibit A, § 5.5.

c.   **Allocation of Settlement Funds**

Allocation of the settlement funds will be based on the number of Qualifying Workweeks a class member worked. *See id*. at §§ 1.24, 5.8. Each individual class member's share will be determined by taking the Qualifying Workweeks for the individual and dividing that by the total Qualifying Workweeks for all class members and multiplying that fraction by the Net Settlement Amount (*i.e.* the Gross Settlement Amount less attorneys' fees and costs, administration costs, and the payment to the LWDA). *See id.* at § 5.8. Payment will not require the submission of any claim form. *See id.* Twenty percent (20%) of the amount paid to class members will be characterized as W2 wages and eighty percent (80%) of the amount paid to class members will be characterized as 1099 income. *See id.* at §§ 5.7.1, 5.7.2.

V.    **ARGUMENT**

a.   **Class Action Settlements And PAGA Settlements are Subject to Court Review and Approval**

A class action may not be dismissed, compromised, or settled without Court approval and the decision to approve or reject a settlement is committed to the Court's sound discretion. *See* Fed. R. Civ. Proc. 23(e). Similarly, settlements under the PAGA require Court review and approval. *See* Cal. Lab.

Code § 2699(l).[1]  Where the class settlement is reached prior to class certification "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 252 (N.D. Cal. 2015).  At the preliminary approval stage, the Court will determine (1) whether to preliminarily and conditionally approve the settlement class subject to a final fairness hearing and certification of the settlement class, (2) whether to preliminarily and conditionally approve the settlement pending a final fairness hearing, and (3) whether to authorize notice to the class.  *See generally Villegas v. J.P. Morgan Chase & Co.*, 2012 U.S. Dist. LEXIS 114597 (N.D. Cal. 2012).  However, courts should give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617 (N.D. Cal. 1979).  There is a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned."  *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).

## b.  <u>Preliminary and Conditional Approval of the Settlement Class is Appropriate</u>

To proceed as a class action it must be found that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. Proc. 23(a).  Additionally, in cases seeking certification under Federal Rules of Civil Procedure 23(b)(3), the questions of law or fact must predominate over questions affecting individual members and a class action must be superior to other methods for fairly and efficiently adjudicating the controversy.  *See* Fed. R. Civ. Proc. 23(b)(3); *Sciortino v. PepsiCo, Inc.*, 2016 U.S. Dist. LEXIS 83937, *10 (N.D. Cal. 2016).  Public policy favors the use of class actions such that "[a]ny doubts regarding the propriety of class certification should be resolved in favor of certification."  *Wixon v. Wyndham Resort Dev. Corp.*, 2009

---

[1] Pursuant to California Labor Code section 2699(l)(2), Plaintiff also notified the California LWDA of the proposed settlement at the time she filed her Motion.  *See* Decl. Rodriguez ¶ 22.

U.S. Dist. LEXIS 100451, *5 (N.D. Cal. 2009); *Allen*, 787 F.3d at 1223.  It is a procedural question; it does not ask whether an action is legally or factually meritorious.  *See Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-1195 (2013); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011).  The parties agree that, for the purposes of settlement, the class should be certified.  *See* Exhibit A, § 5.10.

### i.  Numerosity

A class with more than forty putative members is presumed to satisfy the numerosity prerequisite.  *See Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006); *In re Scorpion Techs., Inc. Sec. Litig.*, 1994 U.S. Dist. LEXIS 21413, *10 (N.D. Cal. 1994).  In the present case, there are approximately 1,061 class members, which exceeds what other Courts have found to be sufficient for satisfying the numerosity requirement.  *See id.*  Thus, this requirement is satisfied.

### ii.  Commonality, Typicality, and Predominance

The commonality element is construed liberally, not requiring every issue of law or fact to be common.  *See In re Conagra Foods, Inc.*, 90 F.Supp.3d 919, 972-73 (C.D. Cal. 2015); *Hanlon*, 150 F.3d at 1019-20; *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328, *17 (C.D. Cal. 2012).  Similarly, the typicality element is permissively construed, only requiring the representative's claims to be "reasonably co-extensive with those of absent class members; they need not be substantially identical."  *See Hanlon*, 150 F.3d at 1020.

The question of predominance begins with the elements of the underlying cause of action and then considers whether those elements are capable of being proven by answers to questions common to the class.  *See Rica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 241 (N.D. Cal. 2014); *Wixon*, 2009 U.S. Dist. LEXIS 100451, *20-21.  The existence of "some variation among the individual employees . . . do not defeat predominance."  *See Alba v. Papa John's USA*, 2007 U.S. Dist. LEXIS 28079, *30 (C.D. Cal. 2007).  This is especially true where the focus of the conduct alleged to be unlawful is on the defendant.  *See Alba*, 2007 U.S. Dist. LEXIS 28079, *31 (finding that while an overtime exemption was a fact intensive inquiry, it does not defeat predominance due to the actual focus on defendant's conduct).  For example, the presence of unlawful policies or practices will support a finding of predominance.  *See, e.g., Tierno v. Rite Aid*

*Corp.*, 2006 U.S. Dist. LEXIS 66436 (N.D. Cal. 2006). Challenges to Plaintiffs' legal theories and doubts regarding Plaintiffs' ability to prove the claims at trial are irrelevant to determining predominance. *See United Steel, Paper & Forestry, Rubber, Mfg. v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010). Similarly, Courts have found that "individual questions about the number of hours worked, wages earned, and compensation paid . . . will not defeat certification." *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 595 (S.D. Cal. 2010). Nor will individualized damages issues act as a basis to deny certification. *See Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 513-514 (9th Cir. 2013) (reversing a denial of certification based on individual issues in determining damages).

In the present case, questions of law or fact are not only common to the class, they also predominate over any potential individualized issues. Each of Plaintiff's theories of recovery are based on alleged common practices of Defendants or their alleged uniformly applied policies (or lack thereof): 1) Defendant's commission, piece rate and/or incentive based compensation system did not directly compensate class members for rest periods and, therefore, Defendant failed to provide legally compliant paid rest periods to class members; 2) Defendant's incentive based compensation system did not compensate class members for non-productive time during pay periods where they only earned incentive based compensation such as commissions and/or piece rate; 3) Defendant's failure to pay all wages owed through the time of class members' termination triggered waiting time penalties; 4) Defendant failed to provide accurate wage statements as they did not itemize rest period premiums and account for all wages owed; and 5) Defendant failed to provide Paid Time Off benefits in violation of California Labor Code section 227.3 and failed to provide Paid Time Off benefits that complied with the California Healthy Workplace Healthy Families Act of 2014 (Cal. Lab. Code sections 245, *et seq.*).[2] *See* Exhibit B.

Claims similar to Plaintiff's have been found to be sufficient for class certification in several cases. *See, e.g., Bluford v. Safeway Inc.*, 216 Cal.App.4th 864, 873 (2013) (certifying rest period class based on claims the piece rate system did not directly compensate for this time); *Vaquero v. Stoneledge Furniture, LLC*, 9 Cal.App.5th 98, 108-114 (2017) (applying *Bluford* to commission pay systems).

---

[2] Plaintiff's PAGA claims do not require certification pre-requisites to be met. *See Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 436 (9th Cir. 2015); *Gallardo v. AT&T Mobility, LLC*, 937 F. Supp. 2d 1128, 1137 (N.D. Cal. 2013).

1    Certification on these theories will also support certification of waiting time penalty and wage statement

2    claims as derivative violations.  *See, e.g. Jimenez*, 2012 U.S. Dist. LEXIS 65328, *67-68; *Lubin v.*

3    *Wackenhut Corp.,* 5 Cal.App.5th 926, 958-960 (2016) ("First, the question whether Wackenhut's wage

4    statements contained the required elements under Labor Code section 226, subdivision (a) is a common

5    question, and Labor Code section 226, subdivision (e)(2)(B)(i) clarifies that injury arises from defects in

6    the wage statement, rather than from a showing that an individual experienced harm as a result of the

7    defect . . . Second, because plaintiffs' meal and rest period claims are suitable for class treatment, their

8    theory that the wage statements failed to include premium wages earned for missed meal and rest

9    periods also is suitable for class treatment"); *Pena v. Taylor Farms Pac., Inc.,* 305 F.R.D. 197, 223 (E.D.

10   Cal. 2015) ("Because the claims of this subclass [regarding waiting time penalties] that may proceed are

11   entirely derivative of the meal break claims of the mixed hourly worker subclass, they meet or fail to

12   meet the commonality and predominance requirements to the same extent"); It is the lawfulness of

13   Defendants' policies and practices themselves that are at issue, which renders certification appropriate.

14   *See Brinker Restaurant Corp. v. Sup. Ct.,* 53 Cal.4th 1004, 1033 (2012) (finding such determinations to

15   be "the sort routinely, and properly, found suitable for class treatment").

16        Plaintiff's claims are typical of the class members claims.  *See* Exhibit B; Declaration of Kelly

17   Hoover ¶ 3.  Plaintiff was subjected to, and experienced, the same policies and practices being alleged to

18   be unlawful.  *See* Declaration of Kelly Hoover ¶¶ 2-3.  As a result, the basis for her claims and the types

19   of remedies sought will be similar amongst all class members.  Plaintiff's claims are, therefore,

20   reasonably co-extensive with those of absent class members.  *See* Exhibit B; Declaration of Kelly

21   Hoover ¶¶ 2-3.

22        **iii.  The Adequacy Requirement is Met**

23        To determine adequacy, answers to the following questions must be given: "(1) do the named

24   plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the

25   named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *See Resnick*

26   *v. Frank (In re Online DVD-Rental Antitrust Litig.),* 779 F.3d 934, 943 (9th Cir. 2015) (finding no

27   conflict because there were no structural differences in the claims of the representative and other class

28   members under the settlement agreement and the enhancement awards were not conditioned on the

---

representatives approval of the settlement).  As to the second question, "[t]he relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation." *See id.*  In the present case, the Agreement has no structural conflicts as there is only one settlement class (no subclasses) and all members of the class are subject to the same distribution formula, so Plaintiff had no incentive to favor one subclass over another. *See id.* at 943; Exhibit A, at §§ 1.5, 1.24.  Neither Plaintiff nor her counsel have any conflicts with the putative class and have conducted an exhaustive review and analysis of the claims to obtain a beneficial result for the class.  *See* Declaration of Kelly Hoover ¶¶ 4-7; Decl. Rodriguez ¶¶ 7-11.  For the same reasons discussed above regarding typicality, Plaintiff shares a common nexus of legal and factual issues with the class ensuring they have the same interest in pursuing the most beneficial results possible in this case.  Additionally, Plaintiff's counsel are experienced and have been found by several Courts to be adequate class counsel in numerous complex wage and hour class actions. *See* Decl. Rodriguez ¶¶ 13-18.  Thus, Plaintiff and Plaintiff's counsel are adequate representatives of the settlement class members.

### iv. Superiority

Factors relevant to determining whether the class action is superior includes "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum . . . ." Fed. R. Civ. Proc. 23(b)(3).  Where certification is for settlement purposes only, considerations regarding manageability are irrelevant. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).  Additionally, where there is relatively few or no other lawsuits concerning the same issues being litigated by members of the putative class, this favors a finding that a class action is superior. *See Dirks v. Layton Brokerage Co. of St. Louis, Inc.*, 105 F.R.D. 125 (D. Minn. 1985).  In the present case, class certification would be superior to alternative forms of adjudication.  First, Plaintiff has uncovered no evidence of any separate lawsuits being filed by class members against Defendant litigating the same or similar issues.  *See* Decl. Rodriguez ¶ 9.  Second, there may be only relatively small awards at stake for class members if they were to attempt individual litigation, which supports a superiority finding. *See Leyva*, 716 F.3d 510.  Third, the class is composed of individuals working in California, asserting claims

based on California substantive law, which supports the desirability of concentrating the litigation in the Eastern District.  *See* Declaration of Kelly Hoover ¶ 2; Exhibit B.

For the reasons set forth above, the Court should preliminarily and conditionally approve the settlement class, subject to a final fairness hearing, as all the prerequisites of Rule 23(a) and the additional requirements of Rule 23(b)(3) are satisfied.

### c.  <u>The Agreement Should Be Preliminarily Approved Because The Terms of The Agreement Are Fair and Within the Range of Reasonableness</u>

A Court may grant preliminary approval of a proposed class settlement "if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval."  *Sciortino*, 2016 U.S. Dist. LEXIS 83937, *12-13 (citing *Harris v. Vector Mktng. Corp.*, 2011 U.S. Dist. LEXIS 48878, *7 (N.D. Cal. 2011); *Dudum v. Carter's Retail, Inc.*, 2015 U.S. Dist. LEXIS 118583, *3 (N.D. Cal. 2015)).  "[T]he court is not to make a final determination of liability or damages, or to hold a trial or rehearsal of the trial. Nor is it to determine whether a better settlement might have been negotiated."  *Boyd*, 485 F.Supp. at 617.

### i.  **The Settlement is a Result of Serious, Informed, Non-Collusive Arm's Length Negotiations Between the Parties**

The parties were in possession of all necessary information during the negotiations and in Mediation.  Plaintiff conducted investigations and engaged in formal and informal discovery, including exchange of documents, records, and company policies that covered all aspects of the class claims, deposed Defendant's person most knowledgeable regarding relevant wage and hour policies, and sought information regarding the class members themselves to ensure that Plaintiff could determine liability and create an accurate damages model.  *See* Decl. Rodriguez ¶¶ 7-11.  As a result, Plaintiff was able to make a reasonable estimation of Defendant's potential liability against which the results of any settlement could be compared.  *See id.*  Additionally, Plaintiff reviewed Defendant's tax returns and internal financial records to assess the financial hardship claims.  For these reasons, the settlement now before the Court was reached at a stage where the parties had a clear view of the strengths and

weaknesses of claims and defenses at issue sufficient to support the settlement. *See Boyd,* 485 F.Supp. at 622.

There was also no collusion in reaching the proposed class settlement as the negotiations were adversarial and contentious, although still professional in nature, at all times. *See* Decl. Rodriguez ¶ 7. There are no signs of collusion present in the Agreement. First, the amount allocated for attorneys' fees is within the ranges approved in by other District Courts and the Agreement is not contingent on the full fee allocation being awarded. *See, e.g., Ruch v. Am Retail Grp., Inc.*, 2016 U.S. Dist. LEXIS 39629, *12 (N.D. Cal. 2016) (30% fee award found reasonable in wage and hour class settlement); *Stevenson v. Dollar Tree Stores, Inc.*, 2011 U.S. Dist. LEXIS 119801, *13 (E.D. Cal. 2011) ("[I]n California, where wage and hour class actions have settled prior to trial for millions of dollars, it is not uncommon for an attorneys' fee award to be in the realm of 25% to 30% of the settlement and, thus, in excess of $1 million"). Thus, the attorneys' fees do not constitute a disproportionate distribution of the settlement. Second, although Defendant agreed to not contest the request for attorneys' fees so long as it does not exceed twenty-five percent of the Gross Settlement Amount, the amount of the fees is tied to the actual cash value of the proposed settlement rather than separate and apart from the class fund, ensuring the Plaintiff's counsels' interests are aligned with class members. *See* Exhibit A, § 5.2. Third, any fees not awarded will be distributed to the class pro rata and, in fact, no funds from the proposed settlement will revert to Defendant for any purpose whatsoever. *See id.* at §§ 5.2, 5.5. Based on these facts, it is clear that there are no signs of collusion present in the Agreement. *See Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. 2011).

### ii. The Settlement Has No Obvious Deficiencies

The Agreement contains no obvious deficiencies and need not be perfect to receive approval. *See Lane*, 696 F.3d at 819. There are no indications of collusive negotiation in reaching the proposed settlement, there is no preferential treatment of the class representative or segments of the class, and the allocations for attorneys' fees is within the ranges approved by District Courts in other wage and hour class action cases, which supports a finding of no obvious deficiencies. *See, supra,* Section V.c.i; *infra,* Section V.c.iii; *Harris*, 2011 U.S. Dist. LEXIS 48878, *23. Instead, the settlement represents a

substantial amount of monetary recovery for class members and requires only the waiver of claims pled or that could have been pled in the litigation.  *See* Exhibit A, § 1.25, 5.1.

### iii. The Settlement Does Not Improperly Grant Preferential Treatment to The Class Representative or Segments of the Class

The Agreement does not contain any structural conflicts between class members or between class members and Plaintiff as there are no subclasses and all class members are subject to the same allocation formula.  *See* Exhibit A, §§ 1.5, 5.8.  Class members are also all subject to the same waiver of claims.  *See* Exhibit A, § 1.25.  Although class members may ultimately receive different amounts under the Agreement, this is not a sufficient reason to deny settlement approval as it is appropriate to account for potential differences in the amount damages suffered by class members and the risks associated with the various asserted claims. *See Lane*, 696 F.3d at 823-825.  Because Plaintiff has alleged the uniform application of unlawful policies and practices by Defendant, a reasonable allocation of the settlement funds would be based on tenure, *i.e.* workweeks.  *See* Exhibit B.

Plaintiff's chosen *cy pres* beneficiary does not operate to grant improper preferential treatment to Plaintiff or segments of the class either.  *See* Exhibit A § 5.5.  The 50% of the value being allocated is directed by California Civil Procedure Code section 384(b).  For the remaining amount, the Voluntary Legal Services Program of Northern California Employment Law Clinic is substantially related to the objectives underlying the interest of absent class members, *i.e.* providing legal advice to employees wishing to assert claims against their employers and providing representation services for claims with the California Labor Commissioner's office.  *See* Decl. Rodriguez ¶ 19; *Lane*, 696 F.3d at 820-21.  It also serves several counties in California, making it extremely likely that absent class members will be able to indirectly benefit from the *cy pres* distribution in addition to the direct monetary benefit they will receive.  *See* Decl. Rodriguez ¶ 19.

### iv. The Settlement Falls Within The Range of Possible Approval

Although a Court is not required to conduct a full fairness analysis at the preliminary approval stage, consideration of the factors generally analyzed at final approval also inform whether this settlement falls within the range of reasonableness and possible approval.  *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted); *Harris*, 2011 U.S. Dist. LEXIS 48878, *28-29.

To determine whether a settlement falls within the range of reasonableness a Court will consider "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *See Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004).

### A. The Settlement is Fair and Reasonable Based on the Strength of Plaintiffs' Case and the Risks, Costs, Complexity and Likely Duration of Further Litigation

A review of the terms of the Agreement does not give rise to any doubts about its fairness. Based on the records and facts of this case, Plaintiff has been able to secure a gross amount of approximately 5.1% to 6.3% of the likely recovery in this matter. *See* Decl. Rodriguez ¶ 12. The *net* recovery equates to approximately 3.2% to 3.9% of the maximum possible recovery. *See id.* The average *net* recovery for putative class members is $236.10. *See id.* Plaintiff believes this settlement to be a reasonable compromise of the class claims, and believe it is well within the percentile ranges of the total available damages that have been approved in other class settlements. *See In re Omnivision Technologies, Inc*., 559 F.Supp.2d 1036, 1042 (2007) (noting that certainty of recovery in settlement of 6% of maximum potential recovery after reduction for attorney's fees was higher than median percentage for recoveries in shareholder class action settlements, averaging 2.2%-3% from 2000 through 2002); *Reed v. 1-800 Contacts, Inc.*, 2014 U.S. Dist. LEXIS 255 (S.D. Cal. 2014) (approving a settlement of $11.7 million where the maximum range of damages was $5,000 for each of the alleged 300,000 instances of unlawful recording violations ($1.5 billion), equaling approximately .78% of the total demand and approximately $800 per class member); *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) (1/6 of maximum recovery deemed adequate). The amounts recovered represent substantial payments in light of the potential issues Plaintiff faced regarding merits and damages that may substantially reduce the amounts class members would otherwise be able to recover. *See* Decl. Rodriguez ¶¶ 7-12.

Attempting to overcome the merits and damages issues would require significant amounts of time and resources and likely result in substantial protracted litigation through discovery, discovery

motions, decertification motions, and appeals without significant likelihood of additional recovery for class members.  *See id.*  For example, had the case proceeded to litigation, Defendant would have argued and presented evidence demonstrating that its commission-based California employees were exempt from the state's minimum wage, overtime, and rest period requirements under the outside sales exemption, or that adjudication of whether the exemption applies would not have been amenable to class treatment.  Further, Defendant would have also contended that Plaintiff's PAGA claim concerning violations of California's paid sick leave law and other derivative claims would have failed because Defendant had cured the violation.  Defendant would have also sought dismissal or summary judgment on Plaintiff's remaining PAGA claims.  While Plaintiff believes that the outside sales exemption is inapplicable due to her contention that she and putative class members were assigned to fixed hospital sites to perform their work that would have qualified as Defendant's place of business under the Wage Orders and Labor Code, Defendant's contentions presented substantial risks that were considered in coming to agreement on this settlement.

Overall, both parties acknowledge the potential risks of continuing to litigate this lawsuit.  Accordingly, this settlement absolutely represents a reasonable compromise given the percentage of the total possible recovery that was secured, the mutual risks of continuing on with the litigation, Defendant's claim of financial hardship and the risk of bankruptcy, the average recovery per class member, the Court's ability and discretion to cut PAGA penalties, which comprised a large portion of Plaintiff's initial demand, and the uncertainty of continued protracted litigation.  *See id.*; Cal. Lab. Code § 2699(e).

## B.  Risk of Maintaining Class Action Status Through Trial

Throughout the litigation, Defendant has continually disputed the propriety of certification of Plaintiff's claims.  *See id.* at ¶ 6.  Although Plaintiff feels strongly that she would be able to obtain certification outside of a settlement context and maintain certification through trial, this is not a certainty as the settlement has taken place before any rulings on certification have been made, as evidenced by Defendant's assertion that it properly paid members of the class due to outside sales exemption status.  Thus, there is a clear risk that must be accounted for in evaluating the adequacy of the settlement.  *See id.*  Additionally, any potential certification would be subject to later appeal and potential reversal.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.  The Amount Offered In Settlement

As stated above, the fact that the proposed settlement is a fraction of the total amount that may possibly be recovered does not render it inadequate.  *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Lane*, 696 F.3d at 823.  Indeed, the average net value per class member is $236.10.  *See* Decl. Rodriguez ¶12.  The recovery by the putative class that is within the range of what other courts have found to be reasonable supports a finding of fairness.

### D.  The Extent of Investigation and Discovery Completed Provided Ample Information to Enter Into an Informed and Reasonable Settlement

As stated above, the parties were in possession of all necessary information during the negotiations in Mediation.  Plaintiff engaged in formal and informal investigation and discovery, including depositions, exchange of documents, records, and company policies, which covered all aspects of the class claims and sought information regarding the class members themselves to ensure that Plaintiff could determine liability and create an accurate damages model.  *See id.* at ¶¶ 7-12.  Plaintiff was in possession of this information for all class members prior to calculating the potential range of liability in this case.  *See id.*  As a result, Plaintiff was able to make a reasonable estimation of Defendant's potential liability.  *See id.*  For these reasons, the settlement now before the Court was reached at a stage where the parties have a clear view of the strengths and weaknesses of their cases sufficient to support the settlement.  *See Boyd,* 485 F.Supp. at 622.

### E.  The Views and Experience of Plaintiffs' Counsel

Plaintiff's counsel have considerable experience in class actions and wage and hour litigation. Plaintiff's counsel have brought and are currently bringing several class actions involving employment law generally and wage and hour issues specifically, having also been approved as class counsel by numerous Courts.  Thus, Plaintiff's counsel are qualified to evaluate the class claims, value of settlement versus moving for certification and going to trial, and viability of possible affirmative defenses.  *See* Decl. Rodriguez ¶¶ 13-18; *Boyd*, 485 F.Supp. at 622 ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness").  Plaintiff's counsel believes that the settlement is fair and reasonable in light of the complexities of the case, Defendant's claim of financial hardship, the

uncertainties of class certification and litigation, and the secured benefit to the class.  *See* Decl. Rodriguez at ¶ 12.

### F.   The Presence of A Governmental Participant and the Reaction of Class Members

As of the time this Motion was filed, there was not a governmental participant in the litigation. *See* Decl. Rodriguez ¶ 22.  However, Plaintiff's counsel will ensure that notice to the relevant state attorneys general pursuant to 29 U.S.C. § 1715 and the LWDA pursuant to Labor Code section 2699(l) is submitted.  *See id.*; Exhibit A, § 7.10.  Information regarding the reaction of class members will be provided after notice and opportunity to respond has been provided.

### G.  Class Counsels' Attorneys' Fees and Costs Request

Plaintiff will apply to the Court for an award of attorneys' fees and costs as well as administration costs in connection with their Motion for Final Approval of the Settlement, which will take place after the class has received notice of the settlement.  *See* Decl. Rodriguez ¶ 23.  The amounts being requested will be clearly stated in the Notice Packet, which will also direct class members how to review and object to said motion.  *See* Exhibit 1 to Exhibit A.

For the foregoing reasons, the proposed settlement falls within the range of possible final approval and should be preliminarily and conditionally approved by the Court subject to a final fairness hearing.

### d.   <u>The Notice Packet and Notice Procedures Comply With Class Members' Due Process Rights</u>

Due process requires the best notice practicable under the circumstances.  *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017).  The content of the notice is sufficient if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard," which includes information regarding "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  *Churchill Vill., L.L.C.*, 361 F.3d at 575 (quoting *Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980));

Fed. R. Civ. Proc. 23(c)(2)(B).  In the present case, the proposed Notice Packet includes all required information and also expressly states the expected estimated shares class members will receive under the settlement.  *See* Exhibit 1 & 2 to Exhibit A (Proposed Notice Packet).  Furthermore, the notice procedure enlists an exhaustive, reasonable process to ensure class members receive notice of the settlement and accounts for various unique circumstances that might affect notice.  *See* Exhibit A §§ 1.16-1.18, 4.2.1-4.2.3, 7.2-7.5.4.

## VI.   CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully request that this Court preliminarily and conditionally approve the proposed settlement class, grant preliminary approval of the Agreement, approve the proposed form and content, and set dates for distribution of, the Class Notice, set a final fairness and settlement class certification hearing and briefing schedule therefor, set a hearing for Plaintiff's Motion for Attorneys' Fees and Costs and briefing schedule therefor that will be heard at the same time as the final fairness and certification hearing, and adopt the implementation schedule contained in the proposed order filed concurrently herewith.

Dated: July 3, 2018                                    **Shimoda Law Corp.**

                                  By:   /s/ Justin P. Rodriguez
                                        Galen T. Shimoda
                                        Justin P. Rodriguez
                                        Attorneys for Plaintiff